Sumiyati TJHI, Petitioner

v.

**ATTORNEY GENERAL OF
the UNITED STATES,**
Respondent.

No. 06–1914.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Sept. 27, 2007.

Filed Oct. 29, 2007.

Cheryl Kracoff, Norristown, PA, for Petitioner.

Richard M. Evans, Joan E. Smiley, David E. Dauenheimer, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: AMBRO, JORDAN and ROTH, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Sumiyati Tjhi petitions for review from the final order of the Board of Immigration Appeals ("BIA") denying her claims for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Tjhi claims that the BIA made several errors of fact and law. For the reasons that follow, we will deny the petition for review.

## I.

Tjhi was born in Jakarta, Indonesia on March 11, 1977, and is ethnically Chinese. She was baptized into the Catholic Church on December 20, 1998. Tjhi alleges that she has suffered persecution throughout her life. First, she asserts that in elementary school native Indonesian classmates pushed her to the ground, threw stones at her, and yelled, "go back to China, you just live here for temporary, this not your country." (Joint Appendix ["JA"] at 16.) She says that in high school she was robbed by students while on the bus to school. She further alleges that she and her friend were the only Chinese on the bus, and, not coincidentally, they were the only people robbed. Tjhi claims that, while she was a University student, native Indonesians grabbed her breasts while she was waiting at a bus stop. She also says that during the May, 1998 riots in Jakarta she felt unsafe and was too frightened to attend church. She testified that, about the time of the riots, while with her mother, she was accosted by a native Indonesian who yelled, "Hi Chinese[,] are you want being raped." (JA at 17.) She also testified that shortly thereafter, again while walking with her mother, she was robbed by a man who was later apprehended by the police but went unpunished. Tjhi states that all of these events led to her departure from Indonesia on May 30, 2001. She arrived in the United States on May 31, 2001 with a temporary visa, and has remained in this country continually since her arrival. Her parents and sister both remain in Jakarta.

On May 28, 2002, Tjhi filed a petition for asylum on the basis of past persecution due to her race, religion, and nationality. She appeared on April 23, 2003 for removal hearings before an Immigration Judge ("IJ"). At that hearing, she conceded removability, but petitioned for asylum, withholding of removal and protection under the CAT. After a hearing on Tjhi's petition, the IJ issued an oral opinion dated December 17, 2004, denying relief. The IJ found Tjhi credible, but found that even if everything she testified to was true, she failed to establish either past persecution or a well-founded fear of future persecution. The IJ went on to state that even if Tjhi had established a subjectively genuine fear, that fear was not objectively reasonable or supported by the evidence.

Tjhi appealed the IJ's decision to the BIA on November 23, 2005, claiming that there was enough evidence in the record to support her well-founded fear of future persecution. Specifically, Tjhi accused the IJ of making several "clearly erroneous factual conclusions" about country condi-

tions in Indonesia and the reasonableness of Tjhi's fear of future persecution. (JA at 78–79.) Nevertheless, the BIA affirmed the IJ's decision on February 14, 2006, finding that Tjhi's experiences did not "rise to the level of persecution." The BIA also relied on Tjhi's "testimony that her parents and her sister continue to live without harm in Indonesia, and that her Catholic sister remains able to attend church, undermines her claim that she has a well-founded fear of persecution if returned to Indonesia." (JA at 87–88.) Tjhi filed a motion to reconsider and argued that the principle of mixed-motive persecution was applicable to her case. The BIA denied Tjhi's motion, finding that "where the events recounted by an asylum applicant do not rise to the level of persecution, the issue of [mixed-motive persecution] is not relevant." (JA at 113.)

## II.

We have jurisdiction over a petition for review from an order of the BIA under section 242(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1).[1] *Lie v. Ashcroft,* 396 F.3d 530, 534 n. 3 (3d Cir.2005).

Where the BIA issues "a decision on the merits and not simply a summary affirmance, we review the BIA's, not the IJ's, decision." *Lie,* 396 F.3d at 534 n. 3, citing *Gao v. Ashcroft,* 299 F.3d 266, 271 (3d Cir.2002). We review the BIA's factual findings to determine if they are supported by substantial evidence. *Id.* "The administrative findings of fact are conclusive un-

less any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

We review questions of law de novo. *Wang v. Ashcroft,* 368 F.3d 347, 349 (3d Cir.2004).

## III.

Tjhi makes two claims in her appeal. First, she asserts that the BIA overlooked the motivation behind the acts of crime perpetrated against her, arguing that those acts were not isolated crimes but in fact constituted a persistent pattern of persecution. Second, she claims that the BIA ignored or misapplied the law by failing to discuss relevant law, by considering her family's circumstances in assessing the objectivity of Tjhi's fear of future persecution, and by refusing to remand the case to the IJ for further testimony regarding her experiences in Indonesia.

To qualify for asylum, a petitioner must show that she is "unable or unwilling to return to ... [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1)(B)(i), 1101(a)(42). To establish a well-founded fear of persecution, a petitioner "must first demonstrate a subjective fear of persecution through credible testimony that her fear is genuine.... Second the applicant must show, objectively, that 'a reasonable person in the alien's circumstances would fear persecution if re-

---

1. We will not exercise jurisdiction over Tjhi's claims for withholding of removal and protection under the CAT because she "makes no specific argument that the BIA's denial of [her] claims for withholding of removal and CAT protection were incorrect. We therefore deem those claims waived and address only the asylum claim." *Vente v. Gonzales,* 415 F.3d 296, 299 n. 3 (3d Cir.2005), citing *Laborers' Int'l Union of N. Am. v. Foster Wheeler* *Corp.,* 26 F.3d 375, 398 (3d Cir.1994). In addition, while Tjhi lists in the "Questions Presented" section of her brief the question of whether the BIA misapplied the law and caused "a Fifth Amendment deprivation to Petitioner" (Petitioner Br. at 5), we have found in the briefing no other reference to, let alone explication of, how the BIA's legal reasoning involves a violation of the Fifth Amendment.

turned to the country in question.'" *Lie v. Ashcroft,* 396 F.3d at 536, quoting *Zubeda v. Ashcroft,* 333 F.3d 463, 469 (3d Cir. 2003).

## A.

In her first argument, Tjhi alleges that the BIA failed to consider the motivation of the criminal acts perpetrated against her, which she claims is sufficient to raise those crimes to the level of persecution. Specifically, Tjhi claims that there is "ample evidence that she was singled out for persecution" because of her ethnicity. (Petitioner's Brief at 9.) Tjhi substantiates her claims by pointing to the incidents when she was shoved in school, robbed on a school bus, and groped and harassed on the street.

■ As upsetting as all these events no doubt were, Tjhi's argument nevertheless misses the mark. The BIA denied her claim because the events recounted by Tjhi do not rise to the level of persecution, regardless of the motives behind them. Persecution has been defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993). Applying this definition, substantial evidence supports the conclusion of the BIA that Tjhi did not establish a well-founded fear of persecution. While it is truly unfortunate that Tjhi was subjected to the acts alleged, those incidents taken together are not severe enough to "constitute a threat to life or freedom." This Court has previously noted that an "account of isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution." *Lie v. Ashcroft,* 396 F.3d at 536.

Contrary to Tjhi's assertions, the criminal behavior to which she was subjected was in fact a group of isolated incidents analogous to those suffered by the petitioner in *Lie. Id.* The events Tjhi recites in support of her application were relatively few in number and spread over the course of a lifetime, beginning with shoving and jeering in grade school and culminating in harassment after her time in University. Moreover, Tjhi did not leave the country until three years after the last acts of persecution alleged in her petition. While we are not insensitive to the real distress she may have suffered as a consequence of those events, the BIA's decision that Tjhi's allegations do not rise to the level of persecution is supported by substantial evidence.

■ Tjhi further contends that the BIA committed an error of law by failing to appropriately consider the principle of mixed-motive persecution. However, where the events in question are not sufficiently severe to constitute persecution, we do not apply the principle of mixed-motive persecution. In *Singh v. Gonzales,* this court held that it is sufficient for a petitioner to prove that the *persecution* he suffered was motivated at least in part by race, religion, nationality, membership in a particular social group, or political opinion. 406 F.3d 191, 197–199 (3d Cir.2005). However, before motivation may be discussed, the acts at issue must be determined to be persecution. *See Ramos–Ortiz v. Ashcroft,* 70 Fed.Appx. 68, 72 (3d Cir.2003) (where there is insufficient evidence to prove persecution there is necessarily insufficient evidence to overturn an IJ's rejection of mixed-motive theory). Because Tjhi did not present sufficient evidence to establish that she was persecuted, the BIA was correct in finding that the principle of mixed-motive persecution does not apply.

## B.

■ Tjhi next contends that the BIA committed several errors of law. Tjhi first

argues that the BIA erred by failing to discuss the definition of persecution cited in the REAL ID Act § 208(b), as codified in 8 U.S.C. § 1158(b). However, 8 U.S.C. § 1158(b) does not define the term "persecution;" rather it requires that an applicant for asylum first meet the definition of "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A) (defining a "refugee" as a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion"). See 8 U.S.C. §§ 1158(b)(1)(A), 1158(b)(1)(B)(I). That definition does not undermine the definition of persecution in *Fatin v. INS*, upon which the BIA relied. It merely elucidates the definition of "refugee" provided by 8 U.S.C. § 1101(a)(42)(A). *Fatin*, 12 F.3d at 1240 (persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"). Therefore, the BIA made no error of law in failing to discuss 8 U.S.C. §§ 1158(b) and 1101(a)(42)(A).

■ Tjhi's second claim of legal error seems to be based on the BIA's reliance on evidence that her family remains in Indonesia as undermining the objectivity of her fear of persecution. As noted earlier, her parents and sister continue to live and work in Jakarta. Her father operates a concrete block manufacturing company, employing four workers, and her sister works in an office and practices Catholicism, apparently without trouble. Tjhi cites *Vente v. Gonzales* for the proposition that the status of a petitioner's family is "irrelevant to an inquiry into whether his own fear of persecution ... is subjectively and objectively reasonable." 415 F.3d 296, 302 (3d Cir.2005). *Vente*, however, is distinguishable. The petitioner in *Vente* was targeted by a paramilitary organization for his participation in a specific community group to which his family did not belong. *Id.* at 298. Tjhi, on the other hand, claims the crimes against her were motivated by her ethnicity, which is shared by her family, and her religion, which is shared by her sister. *See Lie*, 396 F.3d at 537 ("We agree that when family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished.") Therefore, it was not error for the BIA to consider the circumstances of Tjhi's family in making its decision.

■ Finally Tjhi argues that the BIA should have remanded her case to the IJ for further testimony, alleging that the IJ "made [his] finding without any testimony about any of the incidents of persecution from Petitioner." (Petitioner's Brief at 14.) However, contrary to Tjhi's implication, the IJ did not truncate Tjhi's testimony at her hearing. At the end of the hearing, the IJ asked both Tjhi's attorney and the attorney for the government if they wished to ask any further questions. Only after they both replied in the negative did he end the testimony and render his oral decision. The IJ therefore did not take any steps to interfere with the extent or subject matter of Tjhi's testimony, and the BIA did not err in refusing to remand the case for further hearings.

Accordingly, we will deny Tjhi's petition for review.